Good morning. May it please the Court, I am Jennifer Garcia from the Federal Public Defender's Office in Arizona, and I represent the petitioner Robert Murray in this matter. I'd like to start this morning by discussing two of the issues that we raised in our brief. I'd like to start by discussing the Batson issue, which is Claim 1 in the brief, and then I'd like to also spend some time on Claim 3, which is the uncertified issue that we raised. As far as the Batson claim, in this case, we have clear evidence that two of the jurors in this case, the entire Hispanic population of the veneer, was struck by the prosecutor. And when you look at the totality of the record, which is required under Batson, those strikes were racially motivated. And the Arizona Supreme Court was unreasonable under both its application of Batson in this case and its determination of the facts. So we certainly meet the AEDPA standard in this case for a Batson claim. The two jurors that were struck, when you look at each one of them, by doing a comparative juror analysis, there's more than enough evidence in the record to indicate that the disparate treatment of the nonminority jurors versus the minority jurors gives rise to a Batson claim in this matter. So there were, for Heather's, the comparative juror analysis focused on Bonsang and Ellis, and the court suggested they weren't, or the district court suggested they weren't similarly situated because of the closeness of the relationship between, or the type of investigation, whereas Heather's mother was involved in a, there may have been a forfeiture action. So what was wrong with that conclusion for purposes of our deferential AEDPA standard? I think several things, Your Honor. When you look at the differences between the pending criminal actions that were currently going on against Ms. Bonsang's brother-in-law and Mr. Ellis's son-in-law, those were still currently pending. There were other things going on. And the prosecutor asked very little questions about it. He didn't even bother to try to figure out if there was a reason that they would have bias against the State. He simply didn't follow up on any of the information that they stated. Counsel, do you have a case that supports your argument that the deputy prosecutor is required to ask follow-up questions? I don't have a case specifically that says they're required to ask follow-up questions, Your Honor. But BATS in itself talks about, once a prima facie case has been made by defense counsel, you know, that there's at least an inference that a strike was racially motivated, the burden shifts to the prosecution at that point to provide a race-neutral explanation. And when you're looking at the third step, which then is the trial court's responsibility to determine whether or not the race-neutral reason was pretextual, at that point is when the comparative juror analysis can weigh in to show that the reasons behind the strike were pretextual. And at that point, the trial judge is essentially making a credibility determination about the prosecutor's reasoning. Is that fair? I think that is fair, Your Honor. I think that there certainly is, you know, the case law that's out there talks about the fact that they simply can't – it can't be simply a subjective determination on the prosecutor's part. The Burks case from the circuit, for example, talks about the fact that there needs to be something more. When there's been enough to show that there is some racial – the potential of racial motivation for a strike, there has to be some sort of objective evidence that's backing up the reasons the prosecutor gives. And I think here, when you look at the totality of the evidence, which is required under BATS and under Kessler, all the case law on this topic, when you look at the entirety of the voir dire in the context of the trial, for Ms. Garcia-Peters, she was – Excuse me. Could I just interrupt you? I just – something you said, that there has to be some objective basis for what the prosecutor said. It seemed that the Supreme Court backed off on that in, I guess, the Matt Perka case, where it didn't – it indicated that there was a credibility determination and there didn't have to be anything outside of the prosecutor's – to corroborate what the prosecutor said. Is there a Supreme Court case – I know you're citing some of our cases, but for EdPub, we're looking at Supreme Court cases. What Supreme Court case are you relying on for that? Your Honor, Miller-El, I think, also requires the same thing. In Miller-El – let me see if I can give you for sure. Miller-El talks about the fact that it can't – the prosecutor's justification can't be simply the prosecutor – for the strike, that it has to be something more than that. In Perkett, they were talking about no fantastical reason. It can't be the beards are too long, the hair is too long. I think that that's exactly – that's the next sentence, I think, in Miller-El, is it does rely on Perkett to say that it can't be something fantastical. But certainly, I think that same sentence in Perkett talks about the fact that if it is something fantastical, that that's something the trial judge would be able to tell. So if you have an argument about why these jurors are not similarly situated, or they are similarly situated, but we're looking at whether there's an objectively unreasonable determination by the state court. What would make it objectively unreasonable for them to think – for the state court to think that Heathers was differently situated? It seems like there would be a principled basis for doing so. Oh, I think that the – it's the application of Batson in the case of Ms. Garcia-Pethers that is objectively unreasonable. When you look at the Arizona Supreme Court's decision, the Arizona Supreme Court does not consider the totality of the evidence of the voir dire when they make a decision on this claim. They don't look at the statements that the prosecutor made about being unaware that Ms. Garcia-Pethers was Hispanic because she didn't appear to talk Hispanic to him. He doesn't – they don't discuss the fact that he questioned as to whether or not the last name Garcia was a Hispanic name or a Spanish one. Those things that give rise – that were enough to give rise to a prima facie case here, the Arizona Supreme Court didn't discuss. And so it's the failure to look at the totality of the evidence, including the other jurors who did, as I mentioned, have pending cases against them at this time. Counsel, what would happen if the district court had dismissed Ms. Heathers for cause? The trial court? Right. Would you be here on this claim? We might be because of the existence of Mr. Alvarado. Aside from Mr. Alvarado, if Ms. Heathers had been dismissed for cause by the trial court, would you have a claim here? I don't think so because under Batson, it would be the prosecutor's strike. Why isn't Ms. Heathers very, very close to the line of being dismissed for cause? She may be a beneficiary in the forfeiture action, which is still – which is currently pending before the court. That's very different from either Bonsang or Ellis. The charges against her mother were far more serious. She had been in the DA's office herself, had met the DA, and there's still a pending forfeiture action going on. It's interesting that you bring that up, Your Honor, because none of that is very clear. I think if you look at once – let me find it here – once Mr. Zaks starts talking about the reasons why he wants to strike her, it becomes pretty clear he doesn't really know a lot about the case that was pending against Ms. Garcia-Heathers' mother, or that had been pending against her. When they asked Ms. Garcia-Heathers during the general voir dire whether or not she was acquainted with anybody in the county attorney's office, she immediately said, yes, I know Bob Moon. There was a case against my mother. It was dismissed immediately. The judge – it didn't even go to trial. The judge dismissed it. She immediately followed it up by saying she would be able to be fair and impartial and that those charges wouldn't affect her ability to sit as a juror in this case. And that was the end of the inquiry at that point. And then when – after the Batson challenge had been made, when the prosecutor starts talking, he goes on to say – this is on ER 634, if you're trying to find it – he goes on to say it's a very big case. I'm not sure of the status of Mrs. Garcia. From what Mrs. Heathers said, the charge was dismissed. I believe there was some sort of negotiated deal, but I'm not positive about that. He doesn't – he's not saying I looked into this case, and here's what happened, and this is why we should be concerned. He said – Well, he wouldn't know before the jury came in that he would have to recall particulars of any particular case, but he's just trying to explain why he exercised the terms of the challenge, and the court deemed those reasons to be credible. So at this point, we're not really looking at it as if we were the ones making the determination, but whether or not the State court's decision was unreasonable in affording credibility to the prosecutor. Yes, Judge, that's correct. And I think that when you – again, when you look at the totality of the evidence under Batson, the totality of the voir dire and what had happened up to that point, I do think that what the State court did was unreasonable. But the Supreme Court has been pretty emphatic in when we review these Batson determinations that we are not to second-guess the decision that was made by the trial judge who was sitting there and is much more capable of assessing the credibility. So how do we get around, for instance, Feltner? I happen to be on the panel. That was where the case was reversed, and so I'm painfully aware. I understand that. I understand that well, Your Honor. I think – first of all, I'm not sure that I would call it second-guessing. I mean, there's a reason for Federal habeas review, and Federal habeas review is not about second-guessing the trial court. I think what it's about is the constitutionality of the State court prosecution against the defendant and – under the Federal Constitution. And I think there certainly are cases, including the Ombach decision of this Court in Kessler, the Miller-Elver v. Dretke, cases that are habeas decisions. Kessler has far more damning facts than this case. You've got a prosecutor who explicitly and repeatedly refers to the race of the – an ethnicity of the Veneer. He is – he seems obsessed with the fact that they are Indians and refers to the characteristics of Indians as a whole. I mean, he's playing into all kinds of stereotypes, including Asian stereotypes when he strikes the Filipina. And this case isn't even close to that. I certainly agree that, Your Honor, that in Kessler it was much more clear-cut as to the racial bias of the prosecutor in that case. I concede that, of course. But I think there is certainly enough here to indicate that the strikes were racially motivated in this case as well. I think to follow up on that, I think if you look at Mr. Alvarado, I think that's another – a second indication of – But he hasn't cited the fact that he was – he hasn't referred at all to the fact that he's Hispanic. He referred to the fact that he knew him personally and that he thought that he was sort of a wishy-washy personality who could be easily swayed and wouldn't hold closely to his views. That's a neutral reason. It has nothing to do with any kind of Hispanic stereotype. I think if you look at that specific reason only for the strike, I would say yes, that certainly the belief that a juror is indecisive would be, in a vacuum, a valid reason for a strike. But again, Batson requires us to look at the totality of the circumstances here. And Mr. Alvarado was the second Hispanic juror on this panel that was struck by the prosecutor. I mean, for you, the unfortunate thing is two is a very, very small number. It is, but it was – It's a very small number. Yeah, 100 percent of the Hispanics were struck, but it was two people. Right. That was all that was on the veneer. But yes, both of them were struck for reasons that are not supported when you look at the totality of the record. But the Court doesn't have any further questions. I'd like to spend a little bit of time on Claim 3, if that's okay. The Court asked for supplemental briefing on Claim 3 and would certainly urge the Court to issue a certificate of appealability on that claim to certify it for appeal and remand us to the district court for a decision – for the district court to re-examine the motion to amend in light of Martinez. I think when you look at the history of this case, one of the problems that I know the Court is aware of and myself as a career habeas lawyer is aware of, habeas law has changed so much all the time. I mean, over the last 10 years, the landscape of federal habeas law has changed significantly. So things that, you know, the way cases were handled in previous – the correct way to handle cases in previous years has shifted around. Martinez was certainly not available at the time of the district court's decision on the motion to amend here. And I think, you know, when you look at the reasonableness of the district court's denial here, it seems pretty clear that it's an abuse of discretion for them to deny the motion to amend. Well, one of the things I'm struggling with is the district court said it was procedurally barred and disagreed with your argument or his – then-attorney's argument that the state PCR court had not correctly ruled on the procedural bar. But there was no argument to the district court that there was cause and prejudice to overcome that bar, so the district court had no opportunity to address it and said it was futile, which seems to be correct in light of the arguments that were made to the district court at that time. So how would we get around the fact that no cause and prejudice argument was made to overcome the procedural bar to the district court when it made its determination on denying the motion? I think when you look at the sequence of the pleadings, Your Honor, there wasn't really an opportunity to argue cause and prejudice. The previous Habeas Council had filed the motion to amend with the second amended petition lodged with it and argued that the claims were, in fact, you know, had exhausted and were ripe for merits review because of the ambiguous procedural bar imposed by the state court. And even if the district court disagrees with me, there's cause and prejudice to overcome this bar. I mean, the district court said also, undo delay. You should have, you didn't have to withdraw them and try to work them through the state system. At that time, you could have said, well, they're technically exhausted because the state court would reject them on a procedural bar and then argue cause and prejudice. But the defendant didn't either. You're correct, Your Honor. The attorney at the time had decided that he wouldn't try to go back to state court and exhaust them, which I think is a way these claims are handled frequently in other districts. Certainly at the time, the problem that we had was under Rose v. Lundy, mixed petitions were subject to dismissal if they contained the unexhausted claims. And the way that the proceedings were handled, the claims were withdrawn prior to any briefing about cause and prejudice for any procedural default because of the way the case was handled at that time. I know this case gets a little bit procedurally sticky in talking about all the differences in the way the district court handled these cases then as opposed to now. But at the time, all the initial briefing in habeas cases was simply procedural. So the initial petition that was filed was a notice pleading that just raised enough of the factual and legal basis for the claim to provide notice. And then the state's answer would be strictly procedural as to whether or not the claims were defaulted. And then the traverse would be, again, strictly procedural. And then it was only after the district court had gone through and made a determination as to the procedural status of each claim that merits briefing would be allowed. And so here, because of the timing of the withdrawal, there wasn't cause and prejudice briefing initially. And then the part of the procedural history of the case, wouldn't that be part of the analysis of the procedural issues? What would be a cause and prejudice part? It absolutely would be. But that would be raised in the traverse. And the traverse happened, the arguments about cause and prejudice happened after the claims had already been withdrawn. So there, at that point, there weren't claims to do cause and prejudice briefing on at that stage because the withdrawal had occurred. But the district court asked for a statement of exhaustion at that time. And the Petitioner didn't grant, instead of giving that, which could have raised the cause and prejudice issue, he just withdrew them. That's close to the explanation, but I think maybe there's a little, again, background that's needed. The district court, right before this case, the petition in this case was filed, had changed their practice on how the habeas petitions were supposed to be completed. And one of the things that they required in their general procedures order was for the Petitioner to preemptively state in the petition, to include the statement of exhaustion, as they called it, that the claim was supposed to start off identifying where in the state court record the claim had been raised and decided. And at the time, that was a fairly revolutionary statement, I think, again, nationwide. Because procedural defenses or, you know, whether or not a claim is exhausted, those are all affirmative defenses for the state or the Respondent's counsel to raise. And so counsel in this case had attempted to mandamus that the requirement that he include the statement of exhaustion sort of preemptively in the initial habeas petition, but the mandamus was denied. So at that point, when he came back and was required to file the statement of exhaustion, he simultaneously filed the statement of exhaustion and the motion for withdrawal, the notice of withdrawal of claims. So they happened simultaneously, so there wasn't ever even a statement of exhaustion about those claims because, of course, they were, in fact, unexhausted. But let's get back to the second, his motion for a second petition, which is what we're actually looking at. Why couldn't he have put, he have raised the cause and prejudice argument at that point? Because that was when the, we're looking at the district court's decision, and there was no argument that he had cause and prejudice at that point. You're correct, Judge. He hadn't, he had not raised that argument. I can't tell you why he didn't include it. My best guess would be that I think the law of the circuit is very clear about ambiguous procedural orders and what they mean in a Federal habeas. The court didn't express finding that it was procedurally barred. That wouldn't be ambiguous. The part that was ambiguous, Your Honor, is that the State court ruling simply said that it was precluded under Rule 32.2 and failed to identify the specific subsection that each claim was precluded under, because Rule 32.2a includes three separate subsections. But in his petition to the second PCR court, the second PCR petition, he says, well, we anticipate that they're going to say it was as far as under 32a3. I mean, it's very clear what he's arguing, and it was, I think it's hard to fault the district court for saying, you know, obviously it was done on that ground that he was arguing. Judge, I think only some of the claims were, certainly he did, the petition absolutely included the discussion about the claim, the anticipation of the claims being found barred under 32.2a3. But there were other claims raised that were argued for different grounds. For example, the IAC of appellate counsel claim. Because under Arizona law, Ms. Levitt, who was both the direct appealee and the PCR attorney in this case, couldn't have raised IAC of appellate counsel claims against herself in the initial Rule 32 proceeding. And so certainly the discussion of that claim, for example, was included discussion of a different basis for preclusion than Rule 32.2. It couldn't have been precluded under the first prong, right? Because that's the one for claims that were already raised and decided on appeal. That's correct, Your Honor. It's hard to know which one it would have fallen under, but the trial court didn't specify why it would be raising it and under, excuse me, why it would be precluding it. And under a3, if it was waived because it could have been presented before, that's not correct. And so based on Arizona State law, that couldn't be the basis for preclusion of that claim. So because they didn't identify specifically through the claims what the basis was, that was an ambiguous procedural order. And there's case law from the circuit directly on point about 32.2a in the Ceja case and Valerio that specifically talks about the ambiguity of a procedural order when they only identify the rule and not the specific subsection as it applies to the specific claim. And even in any event, even if this Court doesn't agree that that was an ambiguous procedural order, I think now that we have Martinez, it certainly gives rise for a second basis at this stage for the district court to at least reconsider its futility finding as far as the default of the IAC claims in this case. Martinez certainly wasn't available at the time. I think if you look at the State court pleadings that were filed in this case, the second and third PCR, which were sort of combined, the entire basis for doing that was Harriet Leavitt's, the ineffective assistance provided by Harriet Leavitt. Harriet Leavitt was, in fact, the lawyer in Martinez v. Ryan whose conduct was under discussion in that case. She's fairly well known in other cases in this circuit for the ineffective assistance she provided during State direct appeal and post-conviction proceedings. And, again, the State court pleading entirely involved the things that she didn't do in this matter. So had that been an available reason for cause and prejudice at the time, I'm sure that that's something that would have been discussed. However, as we're all aware, the law at the time was that the ineffectiveness of the State post-conviction lawyer could not constitute cause for any default. So that would certainly be a reason for a reconsideration of the motion to amend, at least as to those two claims. Did you want to save any time for rebuttal? I would love to. All right. Thank you. Thank you. We'll hear from the State. May it please the Court. My name is Jeff Zick. I'm with the Arizona Attorney General's Office, and I represent the Respondents Appellees in this matter. With respect to Claim 3, Petitioner had every opportunity to address cause and prejudice in the proceedings in District Court. Wouldn't that have been futile, though? That's what the opposing counsel says. The case law in the Ninth Circuit was fairly clear that the ineffective assistance of a collateral counsel was not a basis for cause and prejudice until Martinez. Well, if you look at the IAC claim, the appellate IAC claim that he took from the withdrawn claims back to State court, he's claiming now that that IAC claim is somehow he gets relief under Martinez. He could have raised the claim that he's raising now that there was conflict of appellate counsel in raising any IAC of appellate counsel, since Harriet Leavitt represented Murray in both the PCR and the direct appeal. So there is that claim that could have been raised as cause for the default, but he never raised it, even despite the fact that the District Court gave him every opportunity to raise cause and prejudice. Now, what pre-Martinez case would have supported an argument that that was cause and prejudice for failing to raise the IAAC claim? I'm not sure there is a case. I can't think of one off the top of my head, but it's a different claim of pure ineffective assistance of trial counsel that Martinez deals with now. The specific claim that Murray is making is that his counsel labored under a conflict of interest. So there may be cases out there prior to Martinez that talked about that as being cause, because it's something external to the petitioner himself. But wouldn't a conflict of interest be a subset of ineffective assistance of counsel, though? It certainly is a subset, but again, unlike ineffective assistance of trial counsel under Martinez now, the conflict could have been something external to, and a District Court could have looked at that as cause for failing to raise these claims. Because isn't the point not so much a conflict of interest as if it's the same lawyer as your PCR counsel is on your appeals counsel, you're not going to get a claim that appeals counsel was ineffective. And that's why he's saying he couldn't bring the claims that appeals counsel wasn't brought in his first state PCR, that appeals counsel was ineffective for a trial counsel claim. What we're talking about here, though, are claims that were withdrawn. And those withdrawn claims primarily were substantive claims raised in the first amended habeas petition that dealt with substantive claims that could have been raised on direct appeal in state court. There were two claims from the withdrawn claims that dealt with IAC. The first was Claim 38, which dealt with a claim that trial counsel was ineffective for failing to get a crime scene expert in collection of evidence to present to the jury. The other claim was an IAC appellate counsel. And those dealt with all those claims that were withdrawn. And those claims were simply that Arizona's death penalty statute was unconstitutional. There was a Ring claim, a Witherspoon claim, even claims that dealt with a claim under Lackey, an Eighth Amendment claim. But isn't there a theory that he had all these meritorious, these claims have never been heard on the merits, correct? Well, for the most part, that's true. There were some claims from the withdrawn claims that were raised by Roger Murray on direct appeal, which the Arizona Supreme Court denied. So there were. Some crossover. But focusing on the ones that Robert raises that were never heard on the merits, that he had these claims that we don't know the merits of, they weren't raised on appeal. And therefore, they were procedurally barred. And then there was no argument at the state for the first PCR hearing that the appellate counsel had been ineffective for failing to raise these claims because it was the same lawyer at the state PCR hearing. Isn't that right? So by the time it gets to the second PCR, it's too late. I mean, everything is all gone. And it does seem like Martinez, at least, not precisely on point. And as you point out, it's all trial counsel. It was focusing on trial counsel and effective assistance. But the teaching of Martinez seems to be that ineffective assistance of the first lawyer who can raise a type of claim could be cause for failing to do so. I mean, isn't that, by analogy, what Martinez says, isn't it applicable here? I would agree with that rationale, Judge Acuda. Martinez, though, is such a narrow case. It can be read to only deal with specific instances of ineffective assistance of trial counsel. I know there's a section in Martinez that talks about how narrow that case is, and it doesn't deal with any other proceedings. The rationale, though, I agree, if it's the first opportunity to raise those claims, that rationale would apply. Then if you get to there, if you say, well, find that the district court abuses discretion in this case, and you have to get to that analysis, then you can simply look at those claims, as the court did in Sexton v. Kozner, and determine whether any further review is necessary. And when you do that, when you look at those claims, all of those claims were claims that could have been raised on appeal. So it's all record-based. So in Sexton, I was on the panel. Looked through to the actual claim he was going to bring and said that there's no substance here. And so the panel could dispose of it on that ground. When I looked at the claims here, none of them had, or many of them had not been developed, and it was even a little bit hard to figure out what the claims were actually referring to. I mean, is that really something that the panel could do here, as opposed to sending it back to the district court for consideration of the cause and prejudice argument? I believe there is a sufficient record from which to make a review of those claims, because they're all record-based claims. We're talking about, and you have a sufficient record in this case to make those determinations. A majority of those claims were already dealt with in Roger Murray's appeal, so we know what the Arizona Supreme Court would have done with those claims. A lot, you know, when you look at some claims, for example, Eighth Amendment violation based on an international treaty, there probably is no merit to that claim. A lackey claim, there's a claim in there, in the withdrawn claims, that deals with the unfairness of the clemency proceeding, which isn't even ripe yet. There's a lethal injection claim that isn't ripe. So there are various claims in here that simply have no merit, and I believe all of the claims, because they could have been raised on appeal, are all record-based, because that is what essentially the ineffective existence of appellate counsel claim is at this point. So I believe there is a sufficient record from which to make that claim. But that's assuming that you find that the district court abused its discretion in this case, which the State doesn't believe that the district court did abuse its discretion, based on the fact that although the trial court order on the first PCR dealt with Rule 32.2, and said it was ambiguous, it could look through to the claims, because no one in this case labored under any misunderstanding that those claims had never been raised before. And Murray never argued, both in district court and in the state court, when he took the claims back on a successive petition, that he had raised those claims before. So everyone knew that the claims had never been raised, and thus the only logical conclusion here is that the claims were waived. And again, the only logical conclusion based on that is that under Arizona's preclusion rules, that 32.283 is the conclusion that must be met. So I don't think the district court abused its discretion in that way. And how do we deal with the Martinez case popping up after all this happened, and saying, well, there's a good cause and prejudice argument overturning, to some extent, non-circuit case law to the contrary? Well, I think the undue delay finding is not affected by Martinez. You could look at the undue delay finding that the district court made, because it made very specific findings about the procedural history of this case. Murray didn't ask for a stay in advance when he withdrew those claims to take them back to state court to exhaust them. Now, in 2002, he asked for a stay on sentencing-based claims when Ring came out. So we know that that is a possibility. He could have simply asked for a stay. Instead, he withdrew the claims without seeking permission or seeking a stay from the district court and took those claims back. It took him a year and five months in order to file a state petition, even though he had addressed those withdrawn claims in his habeas petition. So there is delay built in here. The fact that he sought a stay and then simply sat on these claims awaiting the Ring decision and then waiting further after the trial court denied the Ring claim, waiting for Summerlin to come out, and then after Summerlin finally asking the district court, there was no reason to delay all that. And also given the fact that he could have addressed cause and prejudice. He simply could have left these claims in because they were in the same procedural posture that they were four years ago when he asked for amendment. So I believe the undue delay isn't affected by Martinez and certainly the district court has discretion to deny amendment based on undue delay alone. So if the court doesn't have any further questions on Claim 3, I really don't have anything to add to the Batson claim other than what's in the brief and the district court's order correctly found that the state court did not unreasonably apply Batson in this case. If the court doesn't have any further questions, I'll rely on my brief. Thank you, counsel. Thank you. We'll have your thought on it. Thank you, Your Honor. I'd just like to clear up a couple quick points from Mr. Zick's statements. First of all, there are two other trial IAC claims that are included in the claims that were withdrawn here. There was Claim 38, which is the one he discussed about the failure to retain appropriate guilt-based experts and present testimony challenging the State's evidence at trial. There is also Claim 41, which is a trial IAC claim regarding the failure to voir dire the trial judge. The claim of IAC of Appellate Counsel is claimed to voir dire the trial judge about his feelings about the death penalty. It's a very common claim that we've seen in a lot of the Arizona cases because it was judge sentencing at the time. And then Claim 42, which is the IAC of Appellate Counsel claim, is a third IAC claim, but obviously not a trial IAC claim. As far as the two claims, Claim 38 and Claim 41, that concern trial counsel, those claims fall directly into the rule of Martinez. There's not anything that would require an extension of Martinez as far as a consideration of cause and prejudice as to the default of those two trial IAC claims. They're claims about the ineffectiveness of trial counsel that should have been brought in the first PCR proceeding and were not. And so based on the ineffectiveness of Ms. Leavitt, that would fall squarely into the rule of Martinez as far as those two claims. And as far as the undue delay, I know that the record is a little bit confusing in this regard, but Mr. Murray did not wait for a year and five months in order to file the PCR. I think that date refers to the third PCR, which essentially amended the ring claim into the PCR proceeding that was already ongoing. At the time that the motion, the notice of withdrawal of claims was filed, there was already a Rule 32 proceeding pending on the withdrawn claims. It had already been filed at that same time. I think it was filed in October of 2000. And there was, the State court proceedings were a little complicated in that the Federal Public Defender's Office had sought authority to represent Mr. Murray themselves in the State court proceedings since the claims were duplicative of ones that had been raised in the habeas proceedings, but that ultimately didn't work out, and so private counsel was then appointed to represent Mr. Murray in the remainder of those proceedings. But the claims were actually filed. They had already been filed in State court at the time that they were withdrawn, so there was no delay in going back to State court from the time of withdrawal. And as far as once it was denied, there was a short delay in between the time the Arizona Supreme Court denied the petition for review of that second post-conviction proceeding before they were, the motion to amend was filed. But the reason for that was because there was a stay based on Summerlin, and so the district court proceedings were stayed. And so the day after the stay was lifted on the Summerlin issue was when this motion to amend was filed. So there simply was no undue delay here. I think any argument that he should have acted sooner is just impossible. I mean, as I said... Counsel, would you agree that any potential Martinez remand would encompass only those withdrawn claims that included ineffective assistance of trial counsel claims? Yes, Your Honor. If the remand is based on Martinez, it would necessarily include only the IAC claims, which would fall under Martinez. Ineffective assistance of trial counsel? Yes. Yes, Judge. Not appellate counsel? Martinez, I think, states that it is limited to the first time to raise claims of ineffective assistance of trial counsel. I think, I'm sure you guys have already seen arguments that there certainly are other claims besides simply IAC of trial counsel, which the first PCR would be the first opportunity to bring those claims. An IAC of appellate counsel claim would be included, and I'm sure we'd make that argument. How many claims are we talking about? You mentioned 38, 41, 42. Well, 42 is the IAC of appellate counsel claim. So that would be, strictly speaking, an extension of Martinez to apply it to that claim. But the two IAC claims... I mean, 38, 41. Yes, Judge. Okay. And these are ones, though, that you think need to go back to the district court or that we can decide ourselves? Unfortunately, as Judge Ikuda had stated previously, these claims have never been briefed on the merits. Because they were raised initially in a notice pleading, there's some only bare allegations there. There's no merits briefing whatsoever on those claims. And the two IAC claims, of course, are not record-based. The other ones that were claims that should have been raised on direct appeal were. But in these claims, there's been no development of the record or briefing on the case law. I'm not even sure that there is necessarily any explanation of the applicable case law as far as what's before the court at this time. So I think at least as to those two claims, it would have to be remanded for briefing on the merits before this court could consider the substantiality of those claims. If there's nothing else?  Thank you, counsel. Thank you to both counsel for your helpful argument. The case, as argued, is submitted for decision by the court.
judges: Rawlinson, Bybee, Ikuta